IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 11-cv-02838-CMA-BNB

ROSSI VENTURES, INC., and
Y. MELINDA PASQUINI,

Plaintiffs,

v.

ANTONIO PASQUINI,
PASQUINI FRANCHISING, LLC,
PASQUINI'S RESTAURANTS, LLC,
PASQUINI'S CHERRY CREEK, LLC,
PASQUINI'S 17TH, LLC, and
PASQUINI'S COLFAX, LLC,

Defendants.

_____

**CERTIFICATION OF FACTS PURSUANT TO 28 U.S.C. §636(e)(6)**

_____

This matter arises on the **Plaintiffs' Motion for Contempt Citation** [Doc. # 108, filed

8/29/2012] (the "Motion for Contempt") and my **Order to Show Cause** [Doc. # 113, filed

9/19/2012].  I held an evidentiary hearing on the Motion for Contempt on October 3, 2012.  I

respectfully CERTIFY the following facts to the district judge pursuant to 28 U.S.C. § 636(e)(6).

As a preliminary matter, I recognize that I lack authority to enter a contempt citation

under the facts presented here.  Although 28 U.S.C. § 636(e) confers contempt powers on a

magistrate judge under certain circumstances, those powers do not extend to a civil contempt

occurring outside the presence of the magistrate judge in cases not subject to consent under 28

U.S.C. §636(c).  The contempt procedure applicable here is set out in 28 U.S.C. § 636(e)(6), as

follows:

> [T]he magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified.  The district judge shall thereupon hear the evidence as to the act or conduct complained of and if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before the district judge.

In connection with certifying the facts to the district judge, "the magistrate judge may conduct a hearing, but the magistrate judge functions only to certify the facts and not to issue any order of contempt."  Bowens v. Atlantic Maintenance Corp., 546 F. Supp. 2d 55, 71 (E.D.N.Y. 2008)(internal quotation and citations omitted).  The initial show cause hearing before the magistrate judge merely provides the defendants with an opportunity to explain their conduct prior to the matter being certified to the district judge for a contempt trial.  In addition:

> If the [magistrate judge] finds [the respondents'] explanation to be satisfactory, [he] may choose not to certify the matter for further proceedings.  If this result occurs, the [magistrate judge's] preliminary show cause hearing will have been an efficient means of disposing of the matter.  On the other hand, should the [magistrate judge] not be satisfied with [the respondents'] explanation, [he] cannot adjudicate the matter [himself], but must follow the certification process of § 636(e).

In re Kitterman, 696 F. Supp. 1366, 1370 (D. Nev. 1988).

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt."  Shillitani v. United States, 384 U.S. 364, 370 (1966).  Similarly, the Tenth Circuit Court of Appeals has stated that a "court's interest in ensuring a party's compliance with its orders is a great one, enforceable by fines and imprisonment."  Ohlander v. Larson, 114 F.3d 1531, 1541 (10th Cir. 1997).

Civil contempt is a proper means to enforce an injunction.  Federal Trade Comm. v. Kuykendall, 371 F.3d 745, 749 (10th Cir. 2004).  An order of civil contempt must be supported by clear and convincing evidence establishing that (1) a valid order exists, (2) the defendants had actual knowledge of the order, and (3) the defendants disobeyed the order.  United States v. Ford, 514 F.3d 1047, 1051 (10th Cir. 2008).  Once the movant makes the required showing, the burden shifts to the alleged contemnor to show either that he complied with the order or that he could not comply.  Id.

Where, as here, a party has been enjoined from infringing another's trademark, the infringer has "an affirmative duty to stay a 'safe distance' away from the [plaintiff's mark]." Supershuttle Int'l, Inc. v. Schaefer-Schonewill & Associates, Inc., 1995 WL 880778 *1 (D. Colo. Nov. 17, 1995) (citing Howard Johnson Co. v. Khimani, 892 F.2d 1512, 1517 (11th Cir. 1990); Oral-B Lab., Inc. v. Mi-Lor Corp., 810 F.2d 20, 24 (2d Cir. 1987)).  However, a mere inadvertent violation of a court order will not support a finding of civil contempt.  Lucero v. Shanks, 1996 WL 460047 (10th Cir. Aug. 14, 1996).

**FACTS CERTIFIED TO THE DISTRICT JUDGE**

I hereby find and certify the following facts[1] material to the issue of contempt:

(1)     On April 9, 2012, I recommended that defendants Antonio Pasquini and Pasquini Franchising, LLC, and "their officers, agents, servants, employees, and all other persons in active concert or participation with them, be preliminarily enjoined from use of the name 'Pasquini's Pizzeria' or any variation thereof in connection with the operation of the restaurant

---

[1]The facts are largely undisputed.  The thrust of the dispute is whether the admitted conduct violates the Preliminary Injunction entered by the district judge on June 28, 2012 [Doc. # 78].

located at 240 Milwaukee Street, Denver, Colorado." Recommendation [Doc. # 56] at p. 20.

(2)    On June 28, 2012, the district judge overruled objections, adopted my Recommendation as an Order of the Court, and entered the following preliminary injunction (the "Preliminary Injunction"):

> Defendants and "their officers, agents, servants, employees, and all other persons in active concert or participation with them, [are] preliminarily enjoined from use of the name 'Pasquini's Pizzeria' or any variation thereof in connection with the operation of the restaurant located at 240 Milwaukee Street, Denver, Colorado."

Order [Doc. # 78] at pp. 2-3. The Preliminary Injunction is an existing and valid order.

(3)    Defendant Antonio Pasquini ("Tony Pasquini") owns 55% of Pasquini's Restaurants, LLC ("Pasquini's Restaurants"), and Pasquini's Cherry Creek, LLC ("Pasquini's Cherry Creek"). Pasquini's Cherry Creek owns 100% of Tony P's. Tony Pasquini is a party to this action and admitted that he is aware of the Preliminary Injunction and is responsible for the actions of Pasquini's Restaurants, Pasquini's Cherry Creek, and Tony P's. Consequently, Tony Pasquini, Pasquini's Restaurants, Pasquini's Cherry Creek, and Tony P's had actual knowledge of the Preliminary Injunction. Hereafter, I refer to Tony Pasquini, Pasquini's Restaurants, Pasquini's Cherry Creek, and Tony P's collectively as the Pasquini Defendants.

(4)    The plaintiffs purchased from Tony Pasquini in 2004 and now own "[t]he use of the name(s) 'Pasquini's Pizzeria' or any variation thereof." Recommendation [Doc. # 56] at pp. 5-6.

(5)    Notwithstanding their purchase and ownership of the Pasquini's name, the plaintiffs acquiesced in Tony Pasquini's use of the name Pasquini's in connection with four other restaurants--Pasquini's Uptown, Pasquini's Highlands, Pasquini's Lone Tree, and Pasquini's

DTC.  Id. at pp. 16-17.  Of those, only Pasquini's Highlands and Pasquini's Lone Tree remain in business today, and Tony Pasquini owns a 55% interest in each of them.

(6)     On January 23, 2012, Tony Pasquini opened a restaurant in Denver's Cherry Creek neighborhood using the name "Pasquini's" ("Pasquini's Cherry Creek").  Id. at p. 10.  In recommending that a preliminary injunction be entered, I found that Tony Pasquini's use of the Pasquini name at the Cherry Creek location exceeded the scope of the plaintiffs' prior consent. Following the entry of the Preliminary Injunction, Pasquini's Cherry Creek was renamed "Tony P's."

(7)     Subsequent to the entry of the Preliminary Injunction, the Pasquini Defendants have engaged in a marketing campaign using the tag line "Restaurants by Tony Pasquini."  See, e.g.. Exhs. 1 through 5, 9, 10, A-2, A-3, and A-12.  The Pasquini Defendants' advertisements prominently display the name Pasquini's and identify all three restaurants currently operated by Tony Pasquini--Pasquini's Highlands, Pasquini's Lone Tree, and Tony P's--as well as Pasquini's 17th Ave., a new restaurant due to open in the Fall of 2012.  See, e.g., Exh. 1.

(8)     The Pasquini Defendants argued that the Restaurants by Tony Pasquini marketing campaign does not violate the Preliminary Injunction because (a) the information contained in the advertisements is true, (b) nothing in the Preliminary Injunction prohibits the cross-marketing of all of Tony Pasquini's restaurants, (c) nothing in the advertisements ties Tony P's to the original Pasquini's Pizzeria owned and operated by the plaintiffs ("Pasquini's Broadway"), and (d) each advertisement carefully distinguishes the various Pasquini's Pizzerias by their respective address and location.

(9)     The Restaurants by Tony Pasquini marketing campaign obviously and blatantly

violates the Preliminary Injunction, and the Pasquini Defendants' interpretation of the

Preliminary Injunction is unreasonable.

(10)     First, it is no defense that the information contained in the advertisements is true.

The Preliminary Injunction has been entered.  It found that Tony Pasquini was infringing the

"Pasquini's Pizzeria" trademark which he sold to the plaintiffs in 2004.  In addition, some of the

information in the advertisements is at least misleading, and may be false.  For example, in

describing the history of Restaurants by Tony Pasquini, the Tony P's website states:

> "The place exudes character, and the food stands up to the
> atmosphere," according to Denver Post.  Fresh pizza dough for
> kinds to play with and the freedom to create their own pizza makes
> Tony P's Cherry Creek and Pasquini's the "Best Family Friendly
> Restaurant" according to Rocky Mountain News.  Pasquini's was
> named 5280 Magazine's Top of the Town Best Pizza and Best of
> Westword's Best Pizza, Best Chocolate Cake, Best Organic Salad,
> Best Garlic Bread and Best Subs.  Come in and try one of Tony
> Pasquini's award winning pizzas.

Exh. 10 at p. 2.  See also Exhs. 1 and 9.  The evidence is that all of the awards mentioned were

given to Pasquini's Broadway and none of them to the current Restaurants by Tony Pasquini.


(11)     Although the Preliminary Injunction extends beyond merely prohibiting the

Pasquini Defendants from tying Tony P's to Pasquini's Broadway, the evidence demonstrates

that the Pasquini Defendants have repeatedly made that connection.  In particular, in the

description of the history of Restaurants by Tony Pasquini, the Pasquini Defendants state:

> Tony Pasquini, along with his mother Judy Pasquini, operated their
> restaurant on South Broadway for 22 years with care and devotion
> until Tony sold it in 2004.  We invite you to experience Tony
> Pasquini's new restaurant, Tony P's in Cherry Creek.

Exh. 1 at p. 1.  See also Exhs. 2, 9, 10, and 17.

6

(12)     The Preliminary Injunction prohibits Tony Pasquini "and all other persons in active concert or participation with [him]," "from use of the name 'Pasquini's Pizzeria' or any variation thereof in connection with the operation of the restaurant located at 240 Milwaukee Street, Denver, Colorado."  Recommendation [Doc. # 56] at p. 20.  Cross-marketing runs afoul of and violates the Preliminary Injunction where, as here, it takes the form of using the name "Pasquini's" to advertise and promote "the restaurant located at 240 Milwaukee Street," now known as Tony P's.  Specifically, the use of the name "Pasquini's" in the Pasquini Defendants' marketing campaign is overwhelming and constitutes a prohibited use of the Pasquini's trademark in connection with the operation of Tony P's.

(13)     For example, the name "Pasquini's" appears in logo form seven times on Exhibit 1.  The most prominent feature of the advertisement is the "Pasquini's" logo appearing in the center of the page, promoting the anticipated 17th Avenue restaurant.  The word "Pasquini" appears in the advertisement at least 28 times, either in logo form, in reference to Restaurants by Tony Pasquini, or in the text.  Exh. 1.  The name "Tony P's," by contrast, appears only five times, twice in logo form and three times in the text.  Id.  It is obvious that the Pasquini Defendants are using a variation of the name "Pasquini's Pizzeria" to advertise Tony P's, the restaurant at 240 Milwaukee Street, which is prohibited by the Preliminary Injunction.

(14)     Other examples abound.  Exhibits 2, 3, 4, 5, 9, 10, A-2, A-3, A-9, and A-12 all improperly contain numerous references to "Pasquini's"--in logo form, by reference to Restaurants by Tony Pasquini, and in the text--which dominate the advertisements and create a strong connection between Tony P's and the Pasquini's trademark which Tony Pasquini has been found to be infringing.

7

(15)     The web site depicted by Exhibit A-3 includes on page 2 a drop down box for "Preferred Pasquini's Location."  An entry which appears when the drop down is activated is "Tony P's."  The Preliminary Injunction obviously prohibits the Pasquini Defendants from identifying Tony P's as a "Pasquini's Location."

(16)     The Pasquini Defendants utilize gift cards which bear the logos of the three existing and anticipated Pasquini's restaurants operated by Tony Pasquini, and the logo of Tony P's.  The gift cards may be obtained at any of the Restaurants by Tony Pasquini and will be honored at any of them.  This is another obvious example of the Pasquini Defendants' use of a variation of the name "Pasquini's Pizzeria" in the operation of Tony P's.

(17)     Tony P's jointly sponsors charity events with the Pasquini's restaurants operated by Tony Pasquini.  The Pasquini Defendants use delivery cars marked with the "Pasquini's" logo in connection with these events.  Once again, the Pasquini Defendants are using a variation of the name "Pasquini's Pizzeria" in connection with the operation of Tony P's at these charity events.

(18)     The Preliminary Injunction entered in this case is neither complex nor difficult to understand.  The Pasquini Defendants' failure to comply with the Preliminary Injunction as certified above is not merely inadvertent.  To the contrary, the Pasquini Defendants made a conscious decision, based on an unreasonable interpretation of the Preliminary Injunction, to use a variation of the "Pasquini's Pizzeria" trademark in connection with the operation of Tony P's at 240 Milwaukee Street.

(19)     The Pasquini Defendants have failed  to comply with the Preliminary Injunction and have failed to demonstrate either that they cannot comply with the Preliminary Injunction or

have taken all reasonable steps to ensure compliance.

(20)     The Pasquini Defendants' deliberate uses of a variation of the "Pasquini's Pizzeria" trademark in connection with the operation of Tony P's at 240 Milwaukee Street are acts of contempt.

By separate order, the district judge may set a hearing at which time Antonio Pasquini; Pasquini's Restaurants, LLC; and Pasquini's Cherry Creek, LLC, may be required to show cause why they, or any of them, should not be adjudged in contempt of court by reason of their failure to comply with the Preliminary Injunction [Doc. # 78].  In the event the district judge finds that a material unexcused failure to comply with the Preliminary Injunction exists, Defendants Antonio Pasquini; Pasquini's Restaurants, LLC; and Pasquini's Cherry Creek, LLC, may be adjudged to be in civil contempt of court and may face such actions as the court deems appropriate to coerce obedience to the Preliminary Injunction and/or to compensate the plaintiffs for the injuries they have sustained as a result of that disobedience.  National Labor Relations Board v. Monfort, Inc., 29 F.3d 525, 528 (10th Cir. 1994).

Dated October 4, 2012.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge